## Commonwealth v. Wyles

*Ellis William Van Horn, Jr.*, for appellant.
*Richard C. Snyder*, for Secretary of Revenue.

WRIGHT, P. J., July 14, 1951.—Frank Wyles was involved in a minor automobile accident, and as a consequence he was requested by the Secretary of Revenue to submit to an examination such as is given to persons seeking an operator's license for the first time. The examining officers gave Mr. Wyles an unsatisfactory rating. He subsequently received notice from the secretary that his license had been suspended indefinitely, the reason given being "incompetent operator". Mr. Wyles appealed the suspension to this court, where the matter was heard de novo. The procedure in cases of this nature is outlined in Commonwealth v. Eisenmenger, 365 Pa. 127. Also see Commonwealth v. Smail, 366 Pa. 1.

### Findings of Fact

1. Frank Wyles operated motor vehicles from 1917 to 1939.

2. From 1939 to 1944 he had no operator's license.

3. In 1944 Mr. Wyles took and satisfactorily passed the standard operators' examination and has been driving continuously ever since.

4. Mr. Wyles is a semi-retired farmer and woodsman, and an assistant at public farm sales.

5. In the spring of 1950 a motor vehicle driven by Mr. Wyles came into collision with another motor vehicle near the crest of a. hill on what is known as the Upper Snake Spring Valley Road, Bedford County.

6. Responsibility for that collision has not yet been determined, and is now being litigated.

7. During his entire driving experience Mr. Wyles had no other accidents.

8. During his entire driving experience Mr. Wyles was never prosecuted for any violation of the motor vehicle laws.

9. Mr. Wyles carries liability insurance.

10. As a result of the collision mentioned in finding 5, Mr. Wyles was requested by the Secretary of Rev-

enue to appear for a hearing, at which hearing it was discovered that Mr. Wyles was 71 years of age.

11. Upon the request of the Secretary of Revenue, Mr. Wyles thereafter submitted to an examination such as is given to persons seeking an operator's license for the first time.

12. The examination consisted of four parts, as follows: (1) Physical; (2) reading and interpretation of highway signs; (3) knowledge of the motor vehicle laws; (4) driving ability.

13. Mr. Wyles satisfactorily passed the physical examination. According to the testimony of Dr. H. A. Shimer, Mr. Wyles is in good physical condition for a man of his age.

14. Mr. Wyles satisfactorily passed that portion of the examination which relates to the reading and interpretation of highway signs.

15. Mr. Wyles was given an unsatisfactory rating on that portion of the examination which relates to knowledge of The Vehicle Code.

16. According to the testimony of Officer Achenbach, who examined Mr. Wyles relative to his knowledge of The Vehicle Code, the officer asked Mr. Wyles to answer 10 questions as follows: The first two concerned hand signaling; the third concerned accidents; the fourth was whether it is safe to at all times assume the right-of-way when driving on a through highway; the fifth concerned the meaning of flashing yellow traffic lights; the sixth concerned pedestrians; the seventh concerned the importance of placing a vehicle in proper position in making right or left turns at intersections; the eighth concerned the duty of an operator when overtaken and passed by another vehicle; the ninth concerned the duty of an operator approaching an unprotected intersection; the tenth concerned the meaning of a siren.

17. According to the interpretation of the answers of Mr. Wyles by Officer Achenbach, only five of these questions were answered correctly. The officer did not recall which questions were answered correctly and which questions were answered incorrectly according to his interpretation.

18. The purported failure of Mr. Wyles to satisfy Officer Achenbach as to his knowledge of The Vehicle Code must be considered in the light of the fact that Mr. Wyles had satisfactorily passed a similar examination several years before, on which occasion he had satisfied the then examining officer as to his knowledge of The Vehicle Code; also in the light of the fact that Mr. Wyles has been operating a motor vehicle for almost 30 years without any traffic violations and with only one accident, which was not shown to be due to his fault.

19. According to the testimony of Officer Wilson, Mr. Wyles was given an unsatisfactory rating on that portion of the examination which related to driving ability.

20. The testimony of Officer Wilson was as follows: The trip was begun at the State Highway Garage on East Penn Street just east of the Bedford Borough line. Mr. Wyles started his car in a smooth manner. Mr. Wyles and the officer then proceeded west on East Penn Street and made a left hand turn onto South Wood Street. According to the officer, Mr. Wyles approached this left hand turn from the middle of East Penn Street instead of from a position immediately to the right of the center line. There is no white line on East Penn Street at that point and there was no approaching traffic. Mr. Wyles and the officer proceeded south on South Wood Street to East John Street where Mr. Wyles made another left hand turn which turn, according to Officer Wilson, was made improperly by Mr. Wyles in the same manner as the

preceding turn. There is no white line at the intersection of South Wood Street and East John Street and there was no approaching traffic. Mr. Wyles and the officer then proceeded east on East John Street for a very short distance when the officer told Mr. Wyles to stop. According to the interpretation of the officer, Mr. Wyles made an improper stop because he stopped abruptly and without signal. Under instructions from the officer Mr. Wyles then backed west on East John Street beyond the intersection of East John Street and South Wood Street. According to the officer, this backing was done in an improper manner because it was on the wrong side of East John Street. There was no traffic approaching in any direction at the time. According to the interpretation of the officer, Mr. Wyles made another improper left hand turn onto South Wood Street going north. Mr. Wyles and the officer then proceeded north on South Wood Street to East Penn Street at which point Mr. Wyles stopped properly. Mr. Wyles and the officer then proceeded west on East Penn Street to South Bedford Street where Mr. Wyles negotiated a proper right hand turn onto South Bedford Street going north. Mr. Wyles and the officer then proceeded north on South Bedford Street to East Pitt Street or the Lincoln Highway at which time Mr. Wyles stopped properly and then negotiated a proper right hand turn onto East Pitt Street. Mr. Wyles and the officer then proceeded east on East Pitt Street to South East Street where Mr. Wyles made another proper right hand turn south on South East Street. Mr. Wyles and the officer then proceeded south on South East Street to East Penn Street where Mr. Wyles made a left hand turn east onto East Penn Street, again in an improper manner according to the interpretation of the officer. There is no white line at the intersection of South East Street

and East Penn Street and there was no approaching traffic.

21. All stops by Mr. Wyles in the operation of his vehicle were made in a satisfactory manner with the exception of the one when Mr. Wyles was proceeding east on East John Street and was suddenly told by the officer to stop. In the opinion of the court, an abrupt stop without signal under such circumstances and with no traffic approaching is not a material driving fault.

22. The operation of the car by Mr. Wyles during his ride with Officer Wilson must be interpreted in the light of his past experience of almost 30 years driving without any traffic violations and with only one accident, which was not shown to be due to the fault of Mr. Wyles.

23. None of the driving faults allegedly discovered according to the interpretation of Officer Wilson were material.

24. At no time during the driving examination did Officer Wilson complain about improper driving by Mr. Wyles.

25. During the driving examination, Mr. Wyles observed traffic and stop signs, which is a material factor in determining his competency as an operator.

26. In the fall of 1950 and on other occasions Mr. Wyles had as passengers in the car which he was operating Arthur Grubb and Charles L. Longenecker.

27. The testimony of Arthur Grubb and Charles L. Longenecker is credible and in the opinion of the court is entitled to great weight.

28. Both Arthur Grubb and Charles L. Longenecker testified that Mr. Wyles properly operated the car at all times when they were passengers with him.

29. In the opinion of the court Frank Wyles is a competent operator.

*Conclusions of Law*

1. Frank Wyles is a competent operator.

2. The decision of the Department of Revenue must be reversed, and the appeal of Frank Wyles sustained.

*Order*

Now, July 14, 1951, after hearing de novo and based upon the foregoing findings of fact and conclusions of law, the suspension by the Secretary of Revenue of the operating privilege of Frank Wyles as of May 3, 1951, is herewith reversed, and the appeal of Frank Wyles is sustained.